Number 20-5365 William Turnbull et al. at balance versus Kilolo Kejagazi in our official capacity as acting commissioner of the Social Security Administration and Social Security Administration. Mr. Bruce ready at balance, Ms. Soni ready at police. Morning. Mr. Bruce, you may proceed when you're ready. Thank you, Your Honor. Jonathan Bruce for the plaintiffs. May it please the court. Waiver of exhaustion in the D.C. Circuit is a disjunctive test requiring satisfaction of one of three prongs. In this case, all three prongs are satisfied and the only other court to have considered the same issues, the Beeler case in the Seventh Circuit. The Beeler court found that all three prongs were satisfied to go to futility. First, the Beeler court found that this lawsuit targets a system wide agency policy and practice that uniformly deviates from the governing law and does not depend on the particular facts of any individual case. This is precisely the type of lawsuit that should not be subjected to an exhaustion requirement. Your futility and collaterality arguments are really one in the same, right? It's that that your claim is a legal claim. It doesn't depend on specific facts as found by the agency, and therefore there's really no point in delaying and pushing the clients through the agency before deciding the issue. Yes, Your Honor. In this case, definitely. I would agree with that. The collateral utility would definitely overlap. Yes, ma'am. Mr. Bruce, could you just do you agree that the standard of review here that we have is abusive discretion? No. Find a waiver? No, Your Honor. The district court's decision is not appropriate for that standard of review, but rather de novo. The plaintiffs clearly meet the textbook definition of futility. It is a challenge to a broad-based agency policy resulting in an unlawful reduction, and it's a facial challenge to this broad policy, which is not bound up with an individual benefit determination as the waiver. The waiver question in particular, I'm thinking about potentially irreparable harm. I mean, under Avocados Plus, hasn't this court said that when we're looking at the non-jurisdictional aspect of the waiver issue, we do review the district court's decision under an abusive discretion? Your Honor, the plaintiff's position is that de novo is appropriate here. Certainly, when it comes to the abusive discretion standard, that standard is also met in this case. And I'd be happy to explain why, Your Honor. If we proceed under that standard of review, that would be helpful. Certainly. Certainly, Your Honor. The government attempts to distinguish from the Beeler decision, for example, by mentioning the fact that the Canadian pension at issue in the Beeler case is mentioned in the Palm's policy manual and is partially subject to the windfall provision and partially not. And it opposes to that the fact that there are pensions at issue in this case, which are not mentioned in the Palm's, as if that were relevant or dispositive. It isn't. The only thing that matters is whether or not the plaintiffs are subjected to the unlawful reduction of their benefits. Everything that the government has said about two-tiered pension systems, voluntary contributions, totalized benefits, a 30-year exemption, are all distractions and are irrelevant to whether or not the plaintiffs have been subjected to this policy. And they also require a presumption that the government is right on matters pertinent to their substantive merits. That is to say, the division of employment into what is covered or non-covered. Mr. Bruce, on irreparable harm, and I understand it's your that any one of the three grounds for waiver suffices, but on irreparable harm, it's your burden. And how could we know whether any of these plaintiffs are irreparably harmed by diminution of their social security benefits if we don't even know what their levels are, whether they're people who are really living hand-to-mouth or whether they're people really at the higher end who have a lot of means? I mean, that might make a difference, at least on that and you're showing your proffered declarations are really quite scanty on those points. Your Honor, this case involves senior citizens who by definition are living on a fixed income. Well, no, many senior citizens are not by definition living on a fixed income. That's the problem is, as you know, in this country, people receive social security for whether they're quite well-to-do or otherwise. And whether they're still working. Well, yes, yes. But by definition, I meant the fact that the income from their social security is fixed according to governmental standards. We respectfully bring the Court's attention to the declarations in the record indicating the very palpable harm that those plaintiffs have experienced and also a principle which is well recognized that getting an unexpected reduction in those benefits, which the application of this provision presents to these plaintiffs, presents a special kind of irreparable harm or special kind of harm. Mr. Brewster, you agree that just generally, I mean, we don't have the merits before us, but just generally with the characterization in the government's brief at page 13 of generally the nature of your legal claims, what the nature of your claims is. And I know you objected to the amount of their briefing that focuses on the merits, but in order to pass on your collaterality ground for waiver, it does seem like we need to understand the nature of your claims and whether they are indeed general facial challenges to the statute or whether they're much more contextual and turn on the kinds of factual determinations that are for the agency to make in the first instance. So I just wonder in terms of for our purposes in applying the collaterality analysis, whether you have any disputes with the way the government rather the plaintiffs dispute that on two grounds. First is the relevance of those irrelevant criteria that the government evokes, which by definition are irrelevant. I'm sorry, I think I wasn't clear in my question. Just to understand that the way that the windfall elimination provision works is a little bit obscure. And in order to understand your claims, whether they're categorical facial legal claims, it's helpful to have a little bit of a sense of what it is you're challenging. Yes, yes, you are. And I'm just wondering whether if you turn to the red brief at page 13, there are three bullet points there that describe what the government, I think in quite good faith, is trying to characterize as your claims. And I just wonder if you think that's fair, and if not, how you would characterize your claims very succinctly for the court. We characterize this claim as an attack on a single simple policy provision, Your Honor, which is applied to all plaintiffs and which is unlawful. The government, by contrast, has brought the court's attention various contextualized agency policy criteria, which by definition do not pertain to any of these plaintiffs, as if you suggest that they are relevant. And beyond this, I think you're fighting a softball, but it's your case. But Your Honor, the plaintiffs do not, what I would like to make clear is that the plaintiffs do not expect, do not accept the government's characterization of this case in such a way that would argue that it is required for the application of irrelevant agency criteria to be necessary in order to effect an orderly agency process here. The plaintiffs are attacking a single provision applicable to all plaintiffs. Are you arguing on the merits that the windfall elimination provision shouldn't apply because your client's foreign pension payments are not based on earnings alone, but are based on earnings for which there were also residency requirements? Isn't that part of your case? The fact that there might be residency requirements on some of the work that your clients did abroad renders them not subject to the windfall elimination provision? Your Honor, we are arguing that their employment is deemed covered employment under the windfall elimination provision statute. Right, under various theories, right? No, on the plain language, Your Honor, of 415A7A, which requires that the service that is designated as employment in an international agreement, by definition, all of the plaintiff's employment has been designated as such in the international agreements. So the government's, it's my understanding, Your Honor, if I understand you correctly, I just want to respond to your question by pointing out that the government's invocation of these various irrelevant criteria which present exemptions from the application of the windfall elimination provision by definition are not applicable in this case. And they require the presumption of the lawfulness of those irrelevant criteria, which is a merits position, which is not something which has been briefed yet, and is not something which is an inappropriate presumption to make at this point. When one does not presume the lawfulness of the government's divisions into covered or non-covered employment, one cannot go ahead and simply just dismiss this case on the basis of a presumption that its merits are flawed. Do my colleagues have further questions? Yes, Mr. Bruce. The elephant in the room is the government's argument that there's no venue here, that you don't have proper venue for 31, I think it is, of your 33 plaintiffs. A simple argument based on the straightforward reading of the venue provision. And as I recall, your responses to that all have to do with what would be good policy. Is that correct? It certainly does include that, Your Honor. But in addition to that, we would point out that really the only, that there is precedent in the Beeler case for establishing venue for those who are outside the jurisdiction. In the Beeler case, there was one plaintiff for whom venue was appropriate. The lead plaintiff and others outside the jurisdiction were also included along with that plaintiff under the venue provision at 405G, and the government did not contest that at that time. So it's your position that as a legal matter, venue only need be established for one plaintiff. What's the best case for that? Our best case for that, well, is Jewish War Veterans versus the United States, Your Honor. And we also point to Weber versus Norwalk and Califano versus Yamasaki. It is true that this court has not specifically addressed whether under 405G, if venue is proper for one, it's proper for all. But it has addressed whether that is the case under 1391. And 405G has the same statutory language, the plaintiff, which has been construed to mean a plaintiff, and to reach opposite conclusions on the basis of the same statutory language would violate principles of statutory construction, as well as those policy concerns that Judge Ginsburg mentioned. So the Beeler case is on the Social Security Act. And the other cases you cited are on other venue provisions, correct? Yes, sir. And those were all Supreme Court cases, I believe? Statutes? Or two of them anyway, I think. Two of them, Your Honor. Yes, sir. So I'm not sure why you think it's open to us to depart from the plain reading of the statute when the only counterindication, well, not the only, the principal counterindication is that the Seventh Circuit would disagree with that on this statute. And that the Supreme Court has broadened the reading of the venue provision on other statutes, but not this one. It might be a good argument for the Supreme Court, since they've been receptive in some of these other cases. But I don't see, I think it would take a bold circuit court, let's put it that way, to advance, to accept your position that the means a. The District of Arizona, Your Honor. Well, the Seventh Circuit tells us more, District of Arizona. I know that's your, is that, whatever the case is, that's Fournier, I guess. Yes, Your Honor. Right, yeah, that one's right on point. And is that pending appeal? I'm sorry, sir, could you repeat that? Is that case pending appeal or is that, oh no, it's long settled, sorry. Yes, sir. Okay. Well, thank you. If there are no further questions at this point, I would rest. All right, thank you. We'll give you a couple of minutes for rebuttal and we'll hear now from Missoni. May it please the Court, Susan Missoni, Department of Justice. I'd like to clarify one thing initially, which is that my opposing counsel's references to the Beeler decision that went in their favor were all district court decisions. And because the government won on the merits, none of those initial decisions like class certification or venue were decided. When plaintiff refers to what happened in Beeler, Beeler was a class action and the general rule in class actions is that only the named plaintiffs need established venue. So it isn't necessary. And or exhaustion as well, right? Yes, and. But they filed as a putative class action, so wasn't it error for the district court not to treat it as a class action unless and until he crossed that bridge and decided the class issue on its merits? No, Your Honor. In this case, the plaintiffs did not. They styled it as a putative class action, but that has no legal consequences until they have actually the district court has certified the class here. They never moved for class certification even after a year. In fact, when the court disposed of the government's dispositive motion, there was no pending motion for class certification. So in this case, it was irrelevant. They had to all establish venue and venue. You refer to Beeler as sort of sweeping away what the district court decided on venue. But what about on exhaustion? I mean, Beeler really shows that the legal issues are facial and susceptible of decision without getting into the weeds of administrative processing on the claims. I mean, you don't think there was any error in the Seventh Circuit decision in Beeler, do you? Your Honor, the district court was the one that decided on exhaustion. The Seventh Circuit never addressed it. Right. But they didn't need to. I mean, that's my point. So first, you don't disagree with or find flawed any aspect of the Beeler decision by the Court of Appeals, do you? Not by the Court of Appeals, but the government did not challenge the exhaustion decision by the district court because we won on the merits. Exactly. But if the merits is susceptible of accurate determination in the absence of exhaustion, the question is, why isn't the Beeler decision, Exhibit A, why these plaintiffs in this case should not be required to wait many more years and flounder through the administrative process without the guidance of a decision from our court akin to the guidance that the Beeler case offers in the Seventh Circuit? I think the best way to answer Your Honor's question directly is to give a concrete example of why you would, what would have been the benefit for Mr. Pezos, one of the two individuals for whom venue was proper, if he had gone through the process. What kind of information could have been elicited that would have been helpful here? And I know that my opposing counsel says that this is all irrelevant and a distraction and none of it applies to these plaintiffs, but you'll notice that both in their reply brief and on appeal and here in court, he does not cite the record to support this assertion that it's all irrelevant because there is nothing in the record for these individuals. So let's take Mr. Pezos as an example. He received an initial determination. That's it. All it says is how much money he is going to receive per month that they took into account. He worked an additional year and that his payment is reduced because he is also receiving a pension that was based on work that was not covered by social security taxes. That's all it says. And then it has additional information about how to apply for Medicaid and other things like that. He then goes directly to district court. So what we have in the record is that one four page document for him. If he had gone through the process, the agency would have looked into what type of pension he received because the initial determination doesn't even say that he's receiving a Greek pension. And as it turns out, there are courts. But they don't just sketch for us where I thought the fact the fleshing out of the facts and the close questioning that you refer to happens at the first stage. Is that wrong? Just if you would sketch for us the administrative process and when the details of what kind of pension is being is being received from abroad and what's the nature of that work and what is the terms of the of the totalization agreement with that country that those fact intensive determinations, they don't happen in the first stage. No, your honor. That's the intake stage where the individual meets usually with a representative and provides the information that they have. And there is close questioning at that point, but it continues throughout the decision. You can see some examples of that in the record for some of the step one of the intake stage. And that's the stage that Mr. Pezos has gone through. So the first step is, of course, presentment before the administrative process. The four step administrative process starts with the initial determination, which Mr. Pezos received. And it had just the information that I listed to you. In fact, is it, I believe, 215 of the joint appendix. You can see it. So the next stage is if an if he had sought reconsideration at that point, you get he could say, here are the reasons why I think that you were wrong. And the agency would then look closely at his at the information on his pension. What type of pension did he receive? They would look into whether it was, in fact, earnings based, residence based, citizenship based, based on contributions or financial need or anything else or some combination of those. So the determination that's been made with respect to Mr. Pezos has not taken into account these basic things like what type of pension was it? Was it based on earnings or residence? None of that has been considered. Not yet, because all he did apparently was say that he was receiving a pension that was not from non-covered employment. So then at that point, your honor, all this additional information comes in and he can request to go before an administrative law judge. As you know, the whole process is not the step to reconsideration. I just like a quick if you could just quickly sketch for us. So step one is the intake stage. Step two, you said if he seeks reconsideration, then that goes to the ALJ. So step one is initial determination. Yeah. Step two is the reconsideration decision, requesting reconsideration. Step three is the hearing before the administrative law judge and decision making. And step four is reviewed by the appeals counsel. And at every stage, there can be additional questioning and there will be additional investigation of what the evidence that the individual has put forward. They will check whether this was a payment that was pursuant to an international agreement. They will look into whether sometimes individuals, Mr. Pezos could say, for instance, I worked in Greece before there was an international agreement with Greece, and therefore I was subject to dual taxation. It's the kind of thing that can come out. But none of that is looked into when the agency on its own makes the initial determination. No, because for the international side, we are initially reliant upon information that the individual brings forward. Now, for the individuals covered employment within the United States, the agency does have a record. And that's also quite important because there are exceptions that apply, for instance, for an individual who has worked in 30 years of covered employment. So the agency would, if you look at some of these reconsideration decisions, you'll see reconsideration decision will typically have a listing of covered employment by year and the amount of the earnings. And so then you can see, did the individual work for 30 years, in which they are exempt from the windfall provision. Or if not, this is typically where an individual can say, some of my years of earnings are missing. And there will be some back and forth because it is non-adversarial. They can say, I have payroll stubs that show that I actually did pay Social Security. I don't know why my employer didn't put this in. And there will be some back and forth. And it may be that the individual is entitled to a full exemption. Or if you worked between 20 and 30 years, you get a reduction in the effect of the windfall provision. This is actually slightly shocking to me, just to be candid, that given the fact that the information on the foreign income is not in US databases, at step one, when the determinations, the sort of raw determinations of benefits and the application of the windfall elimination provision is done, it's done in what is admittedly a very over-inclusive application. You just take all foreign income and assume that it's subject to the windfall elimination provision. And only if the individual seeks reconsideration and presents more granular information is that carved back to exclude things that would not cause the windfall and therefore aren't properly counted against the US pension. Is that right? Yes, Your Honor, because you have to look at who has that information. I understand that. But then, but there, but there's not a, the person has to take initiative. If they trust the government and think, you know, the government's expert on this. I had foreign earnings and I had US earnings. And if it turns out that the foreign pension is not the kind that triggers the windfall elimination provision, the person is never the wiser that it's on them to raise that. Your Honor, that's why this is the first step in the process. But the second step depends on someone objecting. Is that right? It's not something that the administration would take you through and say, here's a questionnaire, by the way, we don't have this information. You need to let us know these chapter and verse. Your Honor, if you look at the initial determination, you will see that there, it says, you know, do you have any questions? If you want to appeal, it gives, it lays it out. The expectation is that this is the first step in the process with the individual. And so even if at the end of this entire process, the individual ends up with the same benefit, or maybe simply gets a little bit more, maybe the windfall provision is not completely removed. Nonetheless, what you have at the end of that process is the agency had a chance to correct its errors. It had a chance to reconsider how it applies the provision. You end up with a reason and usually much more elaborate decision explaining why it applied the provision. And you have an administrative record, which you do not have for these two individuals, Mr. Pazos and Mr. Jones. But why, again, I go back to the question I started with, which is in Beeler, the general decisions about the law, about what kind, about the, you know, is consistent throughout or is broader under what is 410 or 411. Those are high level legal determinations that can be sorted out and made clear as they were in Beeler. And then the application of those, it would seem to me, would be much sort of surer if our circuit, like the Seventh Circuit, had a definitive legal ruling on the facial challenges. No, I'm just trying to sort of understand why your triumph in Beeler isn't making you want the same opportunity now rather than many years down the road. I'm not persuaded yet, although I'm open to persuasion, that the details in the individual cases bear on those general legal questions. They certainly bear on the individual's takeaway at the end of the day. But does the answer to those questions as a statutory, regulatory, and policy matter turn on how it's going to affect the pensions of these people? Your Honor, I'd start with the fact that this is a very different case with respect to the individual plaintiffs than Beeler. I don't believe any of the, if you look at Ms. Beeler herself, she went through, I believe, almost the entire process by the time she filed suit. And I believe she had exhausted remedies by the time it got to the question of class certification. Here, the only two individuals that we are concerned with, Mr. Jones and Mr. took no further steps. And therefore, we have no information about whether the provision, whether there were reasons why this provision would not have applied. The plaintiff spends a lot of time saying that this is a blanket, one-size-fits-all application of the statute. And we spend the same amount of time saying, no, it is a highly individualized and very context-driven determination for each one of these plaintiffs. Now, that is why in virtually every other case challenging the windfall provision, and there have been cases in almost every circuit involving exceptions to the windfall provision, like the uniform services exception, which was recently heard in the Supreme Court. In all of those cases, these proceed as individual claims that go through the administrative process and then go to district court. Ms. Stoney, can I just ask you maybe a more legal question? So, is it the Social Security Administration's consistent position that for waiver of exhaustion, you need, that the three position that the government has taken in these cases? Your Honor, the different circuits have different standards on this. So, for instance, in the Seventh Circuit, you had to show all three criteria were met, but they were satisfied under state law by a lesser showing than they are in this circuit. So, we have to go by what the circuits, the way that the circuits approach this. But that's an open question in our circuit, whether you need all three or just one. So, if we were to find that one of the circumstances applied here for Mr. Jones or Mr. Pesos, then would we need to decide whether all three circumstances needed to be met? Would we need to reach that question? It would depend on which of the factors you thought was met here. For instance, Why would that make a difference? For instance, the only case I'm aware of, I believe it was Tataranovich, in which the court suggested that perhaps, perhaps you only needed to show one factor. That case involved futility and the court expressly stated that the purposes of exhaustion would not be served by requiring the individual to go through the administrative process. And that's a question the Supreme Court has asked in cases like Matthew versus Eldridge or City of New York. Here, you reach the opposite conclusion. You would say, here, it would have been very helpful for the plaintiffs to go through that process because we would have a record. Instead, they went directly to district court with a record that for these two individuals, Mr. Jones and Mr. Pesos, consists of one four-page initial determination from Mr. Pesos and nothing from Mr. Jones. And the district court is expected to evaluate the agency's decision-making in applying the windfall provision to these individuals with no reason, no explanation, and no record. That is, uh, that is... But Ms. Stoney, the, what the, one of the things the plaintiffs are challenging is the definition of employment under Section 410. Same issue that was up, one of the issues that was up before the Seventh Circuit in Cleeler. There was no problem in that case of the district court and the court of appeals saying plaintiffs are wrong about their definition of employment under Section 410. And that's not going to be illuminated one way or the other by factual development. In fact, they have a class action so we can be confident that some members of the class are, that it's a live dispute because some members of the class have employment that would be treated one way under their theory and a different way under the government's theory. So I guess I'm just really understanding why this isn't collateral in the same way because it's raising the same claims that were raised in Beeler. So just to be clear, Your Honor, this is not a class action. They're raising it as a class action, yeah. But it is not a class action at this point. Yeah. It's these individuals. So the, um, and now I've lost my train of thought. I apologize. It's the question why it's not a collateral legal question. Okay. It is no more collateral than, Your Honor, um, Heckler versus Ringer, where likewise, the individual there said, I'm not challenging benefits. I have a pure legal question. It is whether in fact this surgery is, you know, necessary and appropriate. And what the Supreme Court said was that is in essence a claim for benefits. And here we can look directly at the plaintiff's complaint. What did they ask for? They asked for recalculation of their benefits and an award of back benefits. They are, this is not related to a claim for benefits. This is a claim for benefits and claims for benefits have to go through the administrative process. As the Supreme Court has said, this act channels virtually all legal challenges through the administrative process. And at the end of that, the agency gets a chance to refine the issues, maybe reduce the number of issues that go to the, to the district court. And maybe, maybe the plaintiff actually, his claim is resolved. There have been, as the plaintiffs themselves pointed out to the district court, several non, non plaintiff individuals who prevailed during the administrative process and one plaintiff. Counsel, isn't also possible that the two persons here may after full determination, not be entitled to any more money at all. That is possible. That's even under their own theory. Yeah. Yes, your honor. We just don't know anything about them. We know nothing about them. We know a very small amount from the complaint, but for instance, for Mr. Pezos, just getting back to him neither the initial determination, because it never contains this kind of information nor the complaint even says how many years he worked in the United States and how many years he worked in Greece. That information just isn't in the case for Mr. Jones. We have no information in the administrative record because the plaintiff's counsel did not provide his social security number and the agency was unable to post records and compile them into the administrative record. And in fact, that was the case for several other plaintiffs as well, which is why their information is not in the administrative record. If these claims are dismissed for want of venue or for want of exhaustion, presumably they could be refiled in the appropriate court after the requisite exhaustion work was completed. It depends, your honor. If the district court had simply dismissed those 31 individuals for improper venue, that is usually a dismissal without prejudice and the individuals are free to hear. There was also a determination about exhaustion of remedies for Mr. Jones and Mr. Pezos, but the court dropped a footnote saying that its analysis on exhaustion also applied to all the other plaintiffs except plaintiff Merkel, who never presented a claim. So it would depend on the preclusive effect of the different parts of the court's judgment. Why would a failure to exhaust determination potentially be preclusive of an ability of that individual to go in and then exhaust? It might fall within a line of cases, your honor, where if the dismissal for improper venue is coupled with another disposition, that then it is treated as a dismissal with prejudice. And are those cases you cited or that you can cite to us? Uh, no, your honor. I don't have them with me when I, um, something I looked up after, after the briefing. So what I'm concerned about, obviously, is if these plaintiffs are, uh, you know, sent back to the administrative process to work it through, especially given what you said about the initial intake stage and how incomplete that is and how much the accuracy of the Social Security Administration's determinations of, of application of the windfall elimination provision depend on, you know, the, the full process. These people are not just going to be precluded and or time barred, uh, by dependent, by their participation in this case, are they? So for some of them, there will be timeliness issues. I mean, I believe Mr. Lunt, his initial determination was in 2004. So that was a considerable amount of time before they actually were much like Mr. Pezos himself, were, um, received determinations in 2016. It was, uh, he was actually within 60 days of, um, the filing of suit and several others, I think as well, are more in his shoes. There are mechanisms, regulations that the agency has for reopening the administrative proceedings, also, um, for excusing, uh, missed deadlines. And the plaintiffs would have to apply and they claim that they were, um, they fell within the regulations and it's very fact dependent. So one could not speak to whether any of them would qualify, but it would, those would be paths that would be open to them. But as I said, for many of them, I think I counted in the administrative record, perhaps two thirds of the people in the administrative record, um, their last contact with the agency was before 2010. So six years before that. If I'm receiving today a pension that's unlawfully low because of an over, uh, elimination of, you know, offsetting of a foreign pension against my, my social security payment, I'm still receiving it today erroneously. I can't go back to the agency and say, it's only come to my attention now that this is unlawfully low. And at least going forward from now on, I'd like it to be corrected. Is that not an available, timely administrative course for a person to take? I think one that seems to me, would fall within a request for reopening. And you would give your reasons why I can't state with any certainty, whether those are grounds that are permitted by the regulation. I would point the court to city of New York where, you know, the court said that there were a number of people who, um, I think were erroneously included in the class whose claims had lapsed. And the court said that, you know, its ruling was not going to apply to them. You know, so if you let your claims lapse, you do not pursue the administrative process. You know, generally even in a class action, you can't, you're not part of the class that gets relief. There is some onus on the individual, your honor. Indeed. As I go back to the initial determination council at the top of two 17, I see we have enclosed a pamphlet, your payments while you are outside the U S it tells you what must be reported and how to report. So that is of course, uh, why you described the initial stage as not including any of that information. And in fact, your honor all along, there has been information available in the regulations, but the agency's regulations on the windfall provision were published in 1987. And there's been information online for as long as the agency has been online. So it is not, this information is not hidden from individuals. It is provided to them. Is there in general, a Hobbs act type 60 day, uh, period for, for appeal? There is a 60 day provision that they, that the individual has to appeal after receiving the final decision that's in section four or five after getting the final decision. Right. But if the, if the court were to, you know, judicially waive some steps or that, or the secretary were to waive completion of some steps, you would still have to file within 60 days of the court's decision. Right. And how about an administrative timeline? What's the, uh, from, from, for example, an initial determination, if you get an initial determination and you are trusting soul and think that the government must have gotten it right, as omniscient as we all know the government to be about affairs, domestic and foreign. Um, then later you realize by reading news of Mr. Bruce and his colleagues' cases that maybe you have an issue. Well, you'd have to, you'd have to move to reopen your case. If, if what's the basic time limitation on between initial determination and when you'd have to question it. Well, on page two 17, which just, uh, which judge Ginsburg has just referred us to, it says you have 60 days to ask for an appeal. Got it. I see it. I don't know if that is, if it is 60 days at each point. So then 60 days after the reconsideration decision to ask for an ALJ hearing, I think every single time you, that you, the claimant receives a communication from the agency, it's going to tell you exactly how much time you have and what you need to do in order to take that further step. That's part of, is there anything in this, in what's sent after the initial determination that describes the, the kind of more, what I referred to before as the more kinds of foreign payments that might or might not have appropriately been taken into account or is that something some there is, Oh, do they, do they get, do they get, you know, the, the two pager on the windfall elimination provision or anything like that? I apologize, your honor. I miss that. I misunderstood. Um, I took your question being, do they receive anything further from the agency in the form of the agency decision and the reconsideration decision will often go into more detail on things. No, I was just saying, you know, because it's on the onus is on the recipient to realize that the initial determination is really a very rough cut, you know, given that the agency doesn't have the information on the foreign income and unless and until the recipient provides it, is there anything that's routinely given to someone after the initial determination that alerts them to that fact? Hey, by the way, this is a rough cut. We don't have anything more on your foreign income than what you tell us. And here are some of the issues that you might want to take up. Nothing like that. It tells you what must be reported and how to report. Yeah. Where are you looking, Doug? 217. 217. Very tough. Your payments while you're outside the United States. In the next sentence. Yeah. Yeah. So we don't have that, but we could presumably look it up. Right. Like I said, your honor, I mean, the regulations and the regulations and the manual provisions are included in the addendum to our brief. They provide a pretty, as you said, your honor, the term granular description of all the kinds of information that's relevant. Then they are fairly easy to look up online. And they go through all the different steps, as I attempted to do with Mr. Pezos's case, all the different ways in which, you know, the different distinctions between different kinds of foreign social security payments and what is relevant and, you know, for purposes of the windfall provision and what takes it out of the realm of triggering the windfall provision at all. So there is a lot of information out there. This is 32 pages, but I gather it's not one doc. No, this is assembled from different documents or different portions of the POMS. Yes, your honor. If your honor would like, I can certainly ask the agency if there is anything that is routinely sent. Well, we see this, it appears that it is this pamphlet about payments, well, your payments while you are outside. I think actually this goes to sending payments overseas. Actually, this is a different issue. So this goes to, if you're living overseas and you want us to send you your social security payments as a result of the initial determination, we can't send them to you if you live in Cuba or North Korea. We can't send them if you're in Azerbaijan. So it's actually quite a different question. Although this is the kind of thing I'm looking for is whether there's any reason for the trusting soul who has an initial determination to realize what a rough cut that is, or before the initial determination, if there's any routine way that the social security administration tells people before intake or at intake, look, if you've got foreign income, here's the questionnaire of the kinds of things we need to know. Is the foreign pension because you live there or is it because you work there? Is it because you worked there for a private employer? Did you pay social security taxes in the US on your foreign income? That kind of thing. Obviously that's what's eventually needed in the administrative process. And I just wonder when that's elicited. I think that information does come out throughout the administrative process. Again, there are many opportunities for questioning. If you read through any of the ALJ hearings, you'll see that a lot of times the ALJs will question the claimants quite closely and generally to elicit information that ends up being to their benefit. So that kind of information can come out there. If your honor would like for me to find out from the agency, I can do that and send a letter to the court, but I think this court does not necessarily need that information to affirm the decision of the district court. Right. It's all about trying to understand how the administrative process interacts with the claims here. Right. It is conceived to be a multi-step process that is highly interactive and highly collaborative and non-adversarial with the claimant. Claimants generally do not like having their benefits reduced and they generally do question and they do take their appeals. That has not been a problem. It's not like there's no dearth of appeals going on. And this, Mr. Pazos, this is the result of the initial determination, this JA 215. Yes, your honor. That is the only document for him in the record. And that's the result of the initial determination. So they do have an alert at the bottom of 215. It's a different citation, but to the windfall elimination provision at the top of 216, to learn more about why we reduced. So we did reduce based on your foreign income and to learn more about why there's a site there. Right. So it actually does not say that it's reduced based on foreign income, just to clarify. It says it's reduced based on your receipt of a pension based on work not covered by Social Security taxes, because the windfall provision also applies to individuals. Right. Right. The entire time in this country. I want to be sure and address. Work not covered by Social Security. Yep. Yes, your honor. Including federal civil servants and state and local employees. Yeah. Firefighters and police officers. Railroad workers. Beg your pardon? Railroad workers. Yes, your honor. There are quite a number of exceptions, and that's why I want to make sure the agency wants to make sure that if people are entitled to an exception, that they get the benefit of it. But you can't give them the benefit of it if you don't have any information on them. So a remand in this case, which is what the parties asked for, would be a remand to make a administrative record that is devoid of relevant information. That is correct, your honor. I mean, on the part of Mr. Jones, there is nothing. Okay. I just want to make sure and answer any questions that the court may have, but I've run way past my time. I apologize. We have a habit of doing that. No need to apologize. You're just answering our questions. Well, if there are no further questions, I would ask the court to affirm the decision of the district court. Thank you. So I believe we ran through Mr. Bruce's time, but we will give you, Mr. Bruce, a couple of minutes for rebuttal. I did have one question, which is, am I right to think that your clients are proceeding through the administrative process, even while they're seeking to bring this case in federal court? We don't have a group of people here who have foregone the administrative process altogether, do we? Some of them have had ongoing cases during dependency of this case, plaintiff William Tran. I'm aware of that case. How about generally the other plaintiffs? Well, no, your honor, because they're outside the 60-day window. And those plaintiffs, by the way, had no idea that there was a possibility of being able to with reference to nothing in the record, that there's no problem with bringing appeals and that they do it all the time. And the agency welcomes that, that is not supported by the actual declarations that are in the record, that in fact, that there was no understanding at all, that there was any possibility of prevailing in this agency policy. But beyond that, your honor, I would state that the council's characterization of the to the initial fact building process is wrong. There is no support for that in the law, in fact, or in logic. One need only look at the initial documents that are uniform sent to every single plaintiff in the record, which they say, well, the very first communication they get from the agency says you receive a non-covered pension. You were subject to a reduction. You have 60 days to appeal. Of course, an agency's appellate body will look into facts. There's no indication whatsoever, because it doesn't exist, that this process is merely provisional. And as we go along, we are going to actually determine at the very end, possibly if this windfall elimination provision is applicable to you. And it may not be. No. We need only look at the record to see that the opposite is true. Well, I think the implication of the if you picked a plaintiff who was timely within the administrative process, who raised each of the types of claims that you're raising here, like, you know, is this employment within the meaning of Section 410 or not? And that person went through the administrative process. And then that person could be the impact plaintiff and a challenge to that provision. And you could get legal determination of a district court and a court of appeals. And so I guess the question really is, why isn't that the way to tee up the issue? Your Honor, I think that we're deviating from the standard that the circuit gives us. Has the agency adopted a policy or practice of general applicability contrary to the law? But let me put it this way. You need a plaintiff withstanding. And we don't know whether the plaintiffs that you represent are or are not potentially benefited by the reading of, for example, the definition of employment in 410 that you advocate in contrast to the reading that the government has adopted. And unless we know that the facts of your client's case are such that would implicate the provisions that you're seeking to challenge, that person doesn't have standing. And we couldn't hear the case. Why isn't that an additional reason why exhaustion is necessary here? It is beyond question that they are subject to the windfall elimination provision. And well, as a general matter, but the specific things that you're trying to challenge. Right. They are subject to it only by means of a single binary policy applied from the beginning, which exists in the palms and says that if you do not satisfy any of the exemption criteria, then you are subject to the general policy. And the fact that there are foreign plaintiffs who may not have been able to provide certain documents is not to turn the presumption of the rule 56 on its head and construe that fact in the light most favorable to the moving party, as opposed to the non moving party. Your Honor, we know by looking at the agency's own statements, why anyone in those shoes has been subject to that policy. And it is because they have been deemed to be recipients of non-covered wages, which you can locate within the policy. Your Honor, counsel pointed to the fact that there were actually some recipients of foreign pensions who won in the agency process. And this somehow supports their argument. I think it's useful to look at how those ALJs in the record actually arrived at their decisions had nothing to do with any of these irrelevant agency criteria and this supposed fact finding process throughout the reconsideration progress that in fact does not exist. No, those ALJs simply looked at the governing law and they looked at the policy and they said, this is no, I mean, the agency just said no to the policy, it violates the governing law. We have a situation, this indicates, this is perhaps the best indication that we're not even talking about an orderly agency process. We have governing law saying do one thing, we have the agency doing another thing. Do my colleagues have any further questions? No, thank you. All right. Thank you, Mr. Bruce. We'll take the case under advisement.
judges: Pillard, Rao, Ginsburg